

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. A. E. Hickerson
County Auditor
Montgomery County
Conroe, Texas

Dear Sir:

Opinion No. O-1718
Re: The liability of counties
for the costs of transport-
ing a public patient on
temporary leave back to the
asylum

We have for consideration your letter of November 18, wherein you present this department with a certain fact situation and request our opinion thereon.

We quote as follows from your letter:

"I have had recently a claim presented by the Sheriff of Montgomery County for the transportation of an epileptic man who was sent to the epileptic institute at Abilene from Liberty County several years ago.

"About a year or two ago his family moved to Montgomery County and the Superintendent of the epileptic institute permitted this party to come to Montgomery County to visit his family. His condition made it necessary to return him to the institute in Abilene. He was returned without further trial.

"Please advise if this transportation charge would be a legal charge against this county."

Hon. A. E. Hickerson, Page 2

Article 3194, R. C. S., 1925, provides as follows:

"The expenses of conveying all public patients to the asylum shall be borne by the counties respectively from which they are sent; and said counties shall pay the same upon the sworn account of the officer or person performing such service . . ."

Article 3195, R. C. S., 1925, provides:

"The expense of conveying to their homes public patients discharged from the asylums, . . . shall be paid by the State. Any officer who may convey a patient to the asylum in accordance with the provisions of the preceding article shall be paid for such service out of the funds of the asylum . . . at the rate of ten cents per mile for himself and each necessary guard he may employ, going and returning and the same for the patient going . . . "

A cursory inspection of the two statutes above leaves an impression of clear conflict; but from a study of the former statutes concerning the matter it is our opinion that they may be reconciled.

Under the Acts of 1876, at page 14u, it was clearly provided that the county should pay the expenses of conveying a public patient from the county of commitment to the asylum and that the State should pay the expenses from the asylum to the home of the patient. These provisos were codified in the Revised Civil Statutes of 1911 as follows:

Article 146 provided that the county was to pay the expenses of conveyance to the asylum. The same provision now appears in Article 3194, R.C.S., 1925.

Article 147 imposed upon the State the obligation to pay the expenses of discharged patients to their homes. This same provision is now incorporated in the first sentence of Article 3195, R.C.S., 1925.

Hon. A. E. Hickerson, Page 3

Article 148 provided for the apprehension of escaped inmates. This same provision is now found in Article 3196, R. C. S., 1925.

Article 149 provided for the payment of the expenses arising from the conveyance of the escapee back to the asylum. This same provision now appears as the second part of Article 3195, R.C.S., 1925.

Article 3194, R. C. S., 1925, makes provision for paying the expenses of a patient to the asylum. Article 3195, R. C. S., 1925, as it now reads, provides for the expenses of an officer who may convey a patient to the asylum in accordance with the provisions of the preceding article. The preceding article has nothing whatever to do with the manner of conveying a patient to an asylum, but refers only to the expenses. Since no provision, under a strict reading of the present statute, is made for the conveyance of an escaped patient back to the asylum, and since the language of the four articles of the 1911 Statutes as referred to above has not been changed, we conclude that it was not the intention of the Legislature in enacting the statutes as recodified, to change the provisions contained in the old statutes. Sincere there is a conflict between Articles 3194 and 3195, R. C. S., 1925, we should give effect, if possible, to both articles and in doing so, the only effect that can be given is to construe them in the light of the old statutes and hold that the Legislature did not intend to make any change and that the provisions of the last sentence of Article 3195 should be construed in the light of and applied to the succeeding article; viz., Article 3196, R. C. S., 1925. As authority for this principle of statutory construction we cite the case of Gapley v. Hudson, 266 S. W. 530.

The difficulty arises due to the failure of the 1925 Revision to employ the same numerical order of the statutes concerning this matter as they are set out and numbered in the 1911 Revision. In other words, Article 3196, R.C.S., 1925, should precede Article 3195, R. C. S., 1925, so that the second sentence of Article 3195, R. C. S., 1925, would not so anomalously conflict with the first sentence of Article 3194, R. C. S., 1925.

By virtue of Article 31931, R. C. S., 1925, a superintendent of an asylum is invested with discretionary power to

Hon. A. E. Hickerson, Page 4

allow patients to temporarily absent themselves. We quote from the Statute:

"The superintendent of any institution . . . may permit any inmate thereof temporarily to leave such institution in charge of his guardian, relatives, friends, or by himself . . . and may receive him when returned by any such guardian, relative, friend, or upon his own application . . . without any further order of commitment . . . Any such superintendent, guardian, relative or friend may terminate such leave of absence at any time and authorize the arrest and return of the patient. Any peace officer of this State shall cause such patient to be arrested and returned upon the request of any such superintendent, guardian, relative, or friend. . . . "

Apparently in the case before us, the Superintendent of the Abilene State Hospital relied upon the above statute for authority to permit this epileptic patient to visit his family. His condition became aggravated thereby necessitating his return to the asylum. The Sheriff of Montgomery County, acting in compliance with his express statutory duty, performed that act. You now ask if this transportation charge should be borne by Montgomery County.

We think not. Throughout his entire visit this patient, theoretically speaking, was in the custody of and under the supervision of the superintendent of the asylum from whence he came. He was not discharged. The superintendent exercised his sole discretion and permitted this patient leave of absence conditioned upon statutory authority to terminate said leave at any time. We do not conceive it as being the intention of the Legislature upon the passage of any of the statutes set out above to fix the burden of reconveyance of this public patient upon the sending county nor any other county. After considering the statutes, it is not easy to fancy that the Legislature intended any conveyance of the patient other than the original transportation to the asylum springing from the order of commitment.

Therefore, we conclude, that the provisions of Article 3194, R. C. S., 1925, providing that the expenses of conveyance to the asylum shall be borne by the respective sending county does not include within its purview any expenses of conveyance arising

from the exercise of the superintendent's sole discretion as provided for in Article 3193i. In this instance, the patient remained the State's charge and the costs should rest upon the Abilene State Hospital rather than upon counties which have no alternative with regard the incurrence of these additional obligations, which are in no way related nor connected with that primary expense attending the original commitment.

Trusting that the above satisfactorily answers your question, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Walter R. Koch_
Walter R. Koch
Assistant

By _Grundy Williams_
Grundy Williams

CW:BBB

APPROVED JAN 6, 1940

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE BY